UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DUANE STIFF-BROWN,

                Plaintiff,

v.

UNKNOWN COSCARELLI, et al.,

                Defendants.

_____/

Case No. 1:24-cv-52

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wriggleworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, Luther, Smith, Oaks, and Greenfield.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Dunn and Shause: (i) First Amendment retaliation claims; and (ii) all Eighth Amendment claims *except* for Plaintiff's Eighth Amendment excessive force claims.  Plaintiff's Eighth Amendment excessive force claims against Defendants Dunn and Shause will remain in the case.  Plaintiff's motion to appoint counsel (ECF No. 3) will be denied.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.[2]  The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  Plaintiff sues MDOC Director Heidi Washington, and the following ICF personnel

---

[2]    *See*    MDOC's    Offender    Tracking    Information    System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=587330 (last visited Apr. 18, 2024).

and medical staff: Sergeant Unknown Coscarelli; Unknown Swanson; Correctional Officer (CO) Unknown Henning; Warden John Davids; Property Officer Unknown Lafler; Assistant Deputy Warden Dale Bonn; Prison Counselor (PC) Eric Simon; PC Walton Smith; Assistant Deputy Warden James Dunigan; Grievance Coordinator Unknown Miller; Captain Unknown Kelley; Sergeant Edward Pietrzyk; PC Unknown Sanborn; Nurse Unknown Jones; Therapist Chelsey Jones; Lieutenant Unknown Hicks; Sergeant Unknown Greenfield; CO Unknown Shause; CO Unknown Clark; CO Unknown Dunn; CO Unknown Sherwood; CO Unknown Norm; CO Unknown Bestman; CO Unknown Oaks; and Resident Unit Manager Unknown Luther. (Compl., ECF No. 1, PageID.1–8.)

In Plaintiff's complaint, he alleges that on August 8, 2023, he asked non-party correctional officer Beehlar for a Prison Rape Elimination Act (PREA) grievance "because [Defendant] Oaks had made a sexual statement towards [Plaintiff]." (*Id.*, PageID.9.)[3]  In response, non-party correctional officer Beehlar told Plaintiff that he "wasn't getting shit because [of] all the bitching [he] was doing." (*Id.*)  Plaintiff then wrote a grievance against non-party correctional officer Beehlar and Defendant Oaks. (*Id.*)

Plaintiff claims that after he submitted this grievance, Defendant Dunn began taking Plaintiff's food, telling Plaintiff that "since [Plaintiff] want[ed] to write grievances on [Dunn's] coworkers, [Dunn] would f[***] [Plaintiff] over every chance

---

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

he got."  (*Id.*)  Plaintiff then informed Defendant Smith about "what was going on,"
and Smith told Plaintiff "not to worry about it, he would handle it."  (*Id.*)

On an unspecified date, Defendant Bestman was conducting a round to allow
inmates to go to recreation.  (*Id.*)  Plaintiff asked when he would be allowed to go to
recreation, and Defendant Bestman stated: "since you like to write grievance[s] that's
[your] rec[reation]."  (*Id.*)  Plaintiff told Defendant Coscarelli "about the situation,"
and Coscarelli told Plaintiff "to f[***] off."  (*Id.*)

On October 23, 2023, non-party correctional officer Naval searched Plaintiff's
cell, and broke Plaintiff's television and took Plaintiff's headphones.  (*Id.*)  Plaintiff
was at recreation at the time, and non-party correctional officer Naval "came to the
yard" and laughed, telling Plaintiff that "since [Plaintiff] like[s] writing grievance[s],
write one on [Naval]."  (*Id.*)  Thereafter, Plaintiff wrote a grievance about non-party
correctional officer Naval breaking Plaintiff's television and telling Plaintiff to write
a grievance about it.  (*Id.*, PageID.9–10.)  Plaintiff states that then "[t]hey requested
a shakedown of [his] cell," and non-party unknown correctional officers "tipped [his]
pictures up and all [his] lawwork [sic] and some of [his] pictures [were] in the toilet."
(*Id.*, PageID.10.)

On October 24, 2023, Defendants Greenfield, Shause, and Dunn were escorting
Plaintiff back from the shower, and Plaintiff saw that his new hygiene items were in
the hallway.  (*Id.*)  Plaintiff "tried to kick [the items] in [his] cell," and Defendants
Shause and Dunn "ran [Plaintiff] unto [sic] the wall causing [Plaintiff's] mouth to
start bleeding," and "creating a[] minor fracture to [Plaintiff's] elbow."  (*Id.*)  When

Plaintiff was "pushed into [his] cell," Defendant Shause told Plaintiff to "catch" himself "while pushing [Plaintiff]," and Plaintiff fell and hit his head "while in cuffs." (*Id.*)  Plaintiff claims that he was "left with cuffs on for a[n] hour." (*Id.*)

On October 27, 2023, Plaintiff tried to commit suicide.  (*Id.*)  Plaintiff states that non-party unnamed correctional officers "took it as a game and left [Plaintiff] in [his] cell to die." (*Id.*)  When Defendant Norm passed Plaintiff his mail, Plaintiff told Norm that he was going to kill himself.  (*Id.*)  Defendant Norm closed the slot on Plaintiff's cell and walked away.  (*Id.*, PageID.10–11.)

"The nurse came around while [Plaintiff] was fa[i]nted and pulled [Plaintiff] out [of] his cell to get checked." (*Id.*, PageID.11.)  Defendants Norm and Sherwood dragged Plaintiff by the arms "while laughing saying he's going to die." (*Id.*)

At some unspecified time, while Defendant Swanson was conducting a round in Plaintiff's unit, Swanson told Plaintiff to "kill [him]self" and "slid [Plaintiff] a razor." (*Id.*)

At another unspecified time when Plaintiff was on suicide watch, Plaintiff tried to kill himself.  (*Id.*)  "When they brought [Plaintiff] out to see healthcare, the unknown nurse refused [Plaintiff] healthcare." (*Id.*)  Additionally, a non-party correctional officer told Plaintiff that "she d[id] not give a f[***] about [Plaintiff's] life." (*Id.*)  Subsequently, on November 9, 2023, Defendant Henning "told [Plaintiff] . . . [to] cut [his] neck open." (*Id.*)

At an unspecified time, non-party correctional officer Evey came to Plaintiff's cell, and when Plaintiff "tried to cuff up" for recreation, the non-party correctional officer told Plaintiff that he would not be taken out for recreation. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his right to be free from retaliation under the First Amendment. (*Id.*, PageID.11–12.) The Court also construes Plaintiff's complaint to raise claims under the Fourth Amendment, Eighth Amendment, and Fourteenth Amendment. As relief, Plaintiff seeks monetary damages and injunctive relief. (*Id.*, PageID.13.)

## II.   Motion to Appoint Counsel

When Plaintiff filed his complaint, he also filed a motion to appoint counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper

presentation of Plaintiff's position.  Plaintiff's motion to appoint counsel (ECF No. 3) therefore will be denied.

## III.   Misjoinder

### A.   Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich.

2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted).   When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a

10

multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

A buckshot complaint that would be rejected if filed by a free person— say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendants Oaks and Dunn are the first Defendants identified by name in the factual allegations of the complaint.[4] Specifically, Plaintiff alleges that on August 8, 2023, he asked non-party correctional officer Beehlar for a PREA grievance "because [Defendant] Oaks had made a sexual statement towards [Plaintiff]."

---

[4] The analysis of joinder must start somewhere. By accepting the first-named Defendants in Plaintiff's factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

(Compl., ECF No. 1, PageID.9.) Non-party correctional officer Beehlar told Plaintiff that he "wasn't getting shit because [of] all the bitching [Plaintiff] was doing." (*Id.*) Plaintiff then wrote a grievance against non-party correctional officer Beehlar and Defendant Oaks. (*Id.*) After Plaintiff submitted this grievance, Defendant Dunn began taking Plaintiff's food. (*Id.*) Plaintiff then informed Defendant Smith about "what was going on," and Smith told Plaintiff "not to worry about it, he would handle it." (*Id.*) Plaintiff presents no further allegations against Defendants Oaks and Smith. Later in the complaint, Plaintiff alleges that Defendant Dunn, as well as Defendants Shause and Greenfield, escorted Plaintiff back from the shower on October 24, 2023. (*Id.*, PageID.10.) Plaintiff saw that his new hygiene items were in the hallway. (*Id.*) Plaintiff "tried to kick [the items] in [his] cell," and Defendants Shause and Dunn "ran [Plaintiff] unto [sic] the wall." (*Id.*)

Plaintiff's claims against Defendants Oaks, Dunn, and Smith are transactionally related, and then his later claims against Defendants Dunn, Shause, and Greenfield are transactionally related. As to the other Defendants in this suit, Plaintiff fails to provide any factual allegations against Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther. (*See id.*, PageID.9–12.) Further, Plaintiff's allegations against Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman are transactionally unrelated to Plaintiff's allegations against Defendants Oaks and Dunn. Specifically, Plaintiff's allegations against Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman stem from

12

discrete, subsequent events that occurred during Plaintiff's incarceration at ICF.  It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred after he requested a PREA grievance on August 8, 2023, claiming that "[e]verything that is happening to [him] is because of the PREA that [he] wrote on [Defendant] Oaks." (*Id.*, PageID.11.)  However, such belief does not transform separate, subsequent events into events that arise out of the same transaction or occurrence.  Although Plaintiff claims that some of these Defendants (i.e., Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman) referenced Plaintiff's filing of grievances when they took the alleged actions against him, Plaintiff fails to allege any *facts* to suggest that these Defendants were referencing the PREA grievance that Plaintiff had attempted to file on August 8, 2023, or the grievance that Plaintiff had filed around that same time against Defendant Oaks and non-party correctional officer Beehlar.  Plaintiff's allegations suggest that he filed other grievances besides the August 8, 2023, grievances, and the fact that Plaintiff was known for filing grievances does not mean that separate, subsequent events arose out of the same transaction or occurrence.

Accordingly, for these reasons, the Court concludes that Plaintiff's claims against Defendants Oaks, Dunn, Smith, Greenfield, and Shause are properly joined.[5]

---

[5] Because Plaintiff alleges no facts about the actions of Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther, he necessarily alleges no facts to suggest that his claims against these Defendants are improperly joined. Instead, the Court will address the merits of Plaintiff's claims against these Defendants to determine whether he states a claim against them.

However, Plaintiff has improperly joined Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman.

**B.  Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman to this action, the Court must determine an appropriate remedy.  Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  Fed. Civ. P. R. 21.  Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir.

14

2000)); *see also DirecTV*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).  The allegations in Plaintiff's complaint begin in August of 2023. (*See* Compl., ECF No. 1, PageID.9.)  Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman because they are misjoined, and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits.[6]  *See*

---

[6] If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner

*Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs.").

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although  the  plausibility  standard  is  not  equivalent  to  a  "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-

---

required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at ICF does mean that all claims arising out these events are properly joined.

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, the Court construes Plaintiff's complaint to raise First Amendment retaliation claims and Eighth Amendment claims against remaining Defendants Oaks, Dunn, Smith, Greenfield, Shause, Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther.[7] The Court first addresses Plaintiff's claims against

---

[7] The Court also construes Plaintiff's complaint to raise Fourth Amendment and Fourteenth Amendment claims; however, these claims are raised against misjoined Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman, and are not raised against the properly joined Defendants. Therefore, any intended Fourth Amendment and Fourteenth Amendment claims against the properly joined Defendants would be subject to dismissal for failure to state a claim.

Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther.

### A.  Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther

As explained below, Plaintiff fails to allege facts showing how Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)  Specifically, when listing the Defendants named in this action, Plaintiff lists these Defendants, however, Plaintiff fails to name these Defendants in the body of his complaint. (*See id.*, PageID.9–12.)  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Further, Plaintiff's claims against Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal.  Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold any of these Defendants liable due to their supervisory positions, government officials, such as Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

19

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct.  Because Plaintiff has failed to allege that these Defendants engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Accordingly, for all of the reasons set forth above, Plaintiff's claims against Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, and Luther will be dismissed.

## B.    Defendants Smith, Oaks, Dunn, Greenfield, and Shause

### 1.    Defendant Smith

With respect to Defendant Smith, Plaintiff's only allegation against Smith is that Plaintiff informed Smith about "what was going on" (i.e., about Defendant Dunn taking Plaintiff's food and telling Plaintiff "he would f[***] [Plaintiff] over every chance he got"), and Smith told Plaintiff "not to worry about it, he would handle it." (Compl., ECF No. 1, PageID.9.)  Plaintiff presents no further allegations against Defendant Smith, and Plaintiff fails to explain, and the Court fails to discern, how Defendant Smith telling Plaintiff that "he would handle it" violated Plaintiff's constitutional rights.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Here, Plaintiff has failed to allege any facts showing that Defendant Smith violated Plaintiff's constitutional rights.  Accordingly, Plaintiff fails to state any claim upon which relief may be granted against Defendant Smith, and Plaintiff's claims against Defendant Smith will be dismissed.

### 2.   First Amendment Retaliation Claims—Defendants Oaks, Dunn, Greenfield, and Shause

Plaintiff contends that Defendants Oaks, Dunn, Greenfield, and Shause retaliated against him in violation of his First Amendment rights.  (*See, e.g.*, Compl., ECF No. 1, PageID.11 (claiming that "[e]verything that is happening to [Plaintiff] is because of the PREA that [he] wrote on [Defendant] Oaks").)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) . In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

21

### a.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016).  Here, Plaintiff references attempting to file a PREA grievance and filing a regular grievance against non-party correctional officer Beehlar and Defendant Oaks.  (Compl., ECF No. 1, PageID.9.)  Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).  To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Plaintiff first claims that after he submitted a grievance against non-party correctional officer Beehlar and Defendant Oaks, Defendant Dunn began taking Plaintiff's food, telling Plaintiff that "since [Plaintiff] want[ed] to write grievances on

[Dunn's] coworkers, he would f[***] [Plaintiff] over every chance he got."  (Compl.,
ECF No. 1, PageID.9.)   Plaintiff does not provide any other facts about what
Defendant Dunn taking his food entailed.  That is, Plaintiff does not explain whether
he was denied whole meals, and if so, how many meals; if he was denied items he had
purchased through the prison store; or whether he was permitted to have the food
items that were taken from him. In short, Plaintiff appears to ask the Court to
fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not
support a claim.   Under these circumstances, Plaintiff's vague and conclusory
assertion that Defendant Dunn took unspecified food from Plaintiff is insufficient to
show that Defendant Dunn took an adverse action against Plaintiff.  *See, e.g.*, *Moore
v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023) (collecting
cases, and concluding that "the denial of a single meal, even taking into consideration
[the plaintiff's] diabetes, is a de minimis event that would not deter a prisoner of
ordinary firmness from engaging in protected conduct"); s*ee also Oliver v. Parkkila,*
No. 13-2448, slip op. at 4 (6th Cir. May. 16, 2014) (citing *Romero v. Lann,* 305 F. App'x
242, 243 (5th Cir. 2008) (per curiam) (denying a retaliation claim because the denial
of two meals in eight months was de minimis).

As to Plaintiff's remaining retaliation claims against Defendants Oaks, Dunn,
Greenfield, and Shause, even assuming that Plaintiff was able to satisfy the second
element of a retaliation claim by showing adverse action, Plaintiff's allegations
regarding the third element of a First Amendment retaliation claim fall short.  First,
with respect to Defendant Oaks, Plaintiff alleges that Defendants Oaks made a

"sexual statement" *prior to* Plaintiff attempting to file a PREA grievance and a regular grievance about the matter. Under these circumstances, Plaintiff necessarily fails to show that Defendant Oaks's statement was motivated by any protected conduct because Plaintiff only alleges that he engaged in protected conduct after Defendant Oaks's statement. Finally, with respect to Defendants Dunn, Greenfield, and Shause, Plaintiff fails to allege any facts suggesting that Defendants' actions while escorting Plaintiff from the shower on October 24, 2023, were motivated by any protected conduct. Instead, Plaintiff alleges that he "tried to kick" his new hygiene items that were in the hallway back into his cell, and Defendants Shause and Dunn "ran [Plaintiff] unto [sic] the wall." (Compl., ECF No. 1, PageID.10.) Plaintiff's attempt to kick his hygiene items into his cell is not protected conduct, and Plaintiff fails to allege any facts to suggest that these Defendants were motivated by any protected conduct that Plaintiff had previously engaged in.

Therefore, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-*

*El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, Plaintiff's First Amendment retaliation claims against Defendants Oaks, Dunn, Greenfield, and Shause will be dismissed.

### 3. Eighth Amendment Claims—Defendants Oaks, Dunn, Greenfield, and Shause

#### a. Defendant Oaks

Plaintiff claims that either on August 8, 2023, or shortly before that date, Defendant Oaks made an unspecified "sexual statement towards [Plaintiff]." (Compl., ECF No. 1, PageID.9.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and

25

harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation.  *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim.  For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and

26

intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, Defendant Oaks made an unspecified "sexual statement" to Plaintiff. (Compl., ECF No. 1, PageID.9.) Under the circumstances alleged by Plaintiff, Defendant Oaks's unspecified verbal remark, while likely offensive and unprofessional, did not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Oaks premised upon Oaks's unspecified "sexual statement" will be dismissed.

### b.   Defendant Dunn—Taking Plaintiff's Food

Plaintiff alleges that at some unspecified time shortly after August 8, 2023, Defendant Dunn "started taking" Plaintiff's food. (Compl., ECF No. 1, PageID.9.) Plaintiff provides no further explanation or supporting facts about this allegation.

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort

27

is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

As relevant to Plaintiff's present claim, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (holding that the denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (concluding that the denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered).  Plaintiff's vague and conclusory allegation, with no other supporting facts or explanation, that Defendant Dunn "started taking" Plaintiff's food falls short of stating a claim under the objective prong of the deliberate-indifference standard.  Consequently, Plaintiff's Eighth Amendment claim against Defendant Dunn regarding Dunn taking Plaintiff's food will be dismissed. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

c.   **Defendants Dunn, Greenfield, and Shause—Escorting Plaintiff from the Shower**

As to Defendants Dunn, Greenfield, and Shause, Plaintiff claims that they escorted Plaintiff back from the shower on October 24, 2023.  (Compl., ECF No. 1, PageID.10.)  When Plaintiff was near his cell, he saw that his new hygiene items were in the hallway.  (*Id.*)  Plaintiff "tried to kick [the items] in [his] cell," and Defendants Shause and Dunn "ran [Plaintiff] unto [sic] the wall causing [Plaintiff's] mouth to start bleeding," and "creating a[] minor fracture to [Plaintiff's] elbow."  (*Id.*)  Defendant Shause then pushed Plaintiff into his cell, telling Plaintiff to "catch" himself while "pushing [Plaintiff]."  (*Id.*)  Plaintiff fell and hit his head "while in cuffs."  (*Id.*)  Additionally, Plaintiff claims that he was "left with cuffs on for a[n] hour."  (*Id.*)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*  However, not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9.  "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'"  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."  *Williams*

29

*v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Further, an officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'"  *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F.  App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

### 1.     *Detention in Handcuffs*

As an initial matter, with respect to Plaintiff's allegation that he was "left with cuffs on for a[n] hour" on October 24, 2023, Plaintiff fails to allege any facts to show that any individuals, let alone Defendants Dunn, Shause, and Greenfield, were involved with, or knew about, Plaintiff being kept in handcuffs for an hour.  At most, Plaintiff's allegations suggest that Defendants Dunn, Shause, and Greenfield knew that Plaintiff was handcuffed when they returned him to his cell on October 24, 2023; however, Plaintiff fails to allege any facts to suggest that they were involved in Plaintiff's continued detention in handcuffs on that date.  Therefore, any intended Eighth Amendment claims against Defendants Dunn, Shause, and Greenfield regarding Plaintiff's one-hour detention in handcuffs will be dismissed.  *See Gilmore*,

92 F. App'x at 190 (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

## 2. *Use of Force*

With respect to Defendant Greenfield, Plaintiff's only allegation against Greenfield is that Greenfield escorted Plaintiff, along with Defendants Dunn and Shause, back from the shower on October 24, 2023. (Compl., ECF No. 1, PageID.10.) Although Plaintiff alleges that Defendants Dunn and Shause used force against him on that date, Plaintiff does not allege that Defendant Greenfield did so.

To the extent that Plaintiff intended to allege that Defendant Greenfield failed to protect him from Defendant Dunn's and Defendant Shause's use of force, he fails to state such a claim. Specifically, even assuming that Defendant Greenfield "had reason to know that excessive force would be" used by Defendants Dunn and Shause, Plaintiff fails to provide any allegations from which the Court could conclude that Greenfield "had both the opportunity and the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). Plaintiff's allegations do not suggest that Defendants Dunn's and Shause's use of force occurred over a lengthy period of time; instead, the allegations suggest that the use of force occurred quickly. The Sixth Circuit has held that "where the 'act of excessive force unfolds in a matter of seconds, the second requirement [i.e., having both the opportunity and the means to prevent the harm] is generally not satisfied.'" *Alexander*, 733 F. App'x at 265 (quoting *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016)); *see Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007)

(collecting cases). The Sixth Circuit's reasoning for this determination is "that it demands too much of officers to require that they intervene within a sudden and quickly-expired moment of opportunity." *Pennington*, 644 F. App'x at 548 (citing *Ontha*, 222 F. App'x at 506).

Here, Plaintiff fails to allege facts suggesting that the incident with Defendants Dunn and Shause lasted long enough for Defendant Greenfield to both perceive what was going on and intercede to stop the use of force. Moreover, to the extent that Plaintiff intended to hold Defendant Greenfield, a sergeant, liable for the actions of his subordinates, Defendant Greenfield may not be held liable for the unconstitutional conduct of his subordinates under a theory of respondeat superior or vicarious liability. *See, e.g.*, *Iqbal*, 556 U.S. at 676; *see also supra* Section IV.A. Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Greenfield.

Finally, as to Defendants Dunn's and Shause's alleged use of force, taking Plaintiff's factual allegations as true and in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Dunn and Shause on initial review.

### d. Summary

In summary, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants Oaks and Greenfield will be dismissed. Additionally, all of Plaintiff's Eighth Amendment claims against Defendants Dunn and Shause will be dismissed *except* for Plaintiff's excessive force claims.

## **Conclusion**

For the foregoing reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and will deny Plaintiff's motion to appoint counsel (ECF No. 3). Further, the Court will drop as misjoined Defendants Swanson, Henning, Sherwood, Norm, Coscarelli, and Bestman.  The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.  Additionally, having conducted the review required by the PLRA, the Court determines that Defendants Davids, Lafler, Bonn, Simon, Dunigan, Miller, Kelley, Pietrzyk, Sanborn, Washington, Unknown Jones, Chelsey Jones, Hicks, Clark, Luther, Smith, Oaks, and Greenfield will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Dunn and Shause: (i) First Amendment retaliation claims; and (ii) all Eighth Amendment claims *except* for Plaintiff's Eighth Amendment excessive force claims.  Plaintiff's Eighth Amendment excessive force claims against Defendants Dunn and Shause will remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 24, 2024                          /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge